IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEPHEN M. MARTIN,            )
                              )
        Plaintiff,            )
                              )
    v.                        )      1:05CV00063
                              )      1:05CV00462
SENN DUNN LLC,                )
                              )
        Defendant.            )

MEMORANDUM OPINION

BEATY, District Judge.

This matter came before the Court for hearing on October 20, 2005 on Defendant's Motion to Enforce the Settlement Agreement [Document #9 in 1:05CV63]. Plaintiff Stephen M. Martin ("Plaintiff") filed two EEOC discrimination charges against his former employer, Senn Dunn Marsh & Roland ("Defendant"). During the EEOC mediated settlement conference related to the second EEOC charge, Plaintiff and Defendant purportedly reached a Settlement Agreement (the "Agreement") addressing the issues related to both charges of discrimination. However, Plaintiff and Defendant now dispute the interpretation and intent of one of the essential provisions of the Agreement. For the reasons discussed below, the Court concludes that the disputed term of the Agreement is ambiguous. After considering the evidence presented during the hearing regarding the parties' intent, the Court concludes that the parties did not share the same intent or understanding as to this provision, and there was no "meeting of the minds" with respect to the disputed term. Therefore, because no actual agreement was reached

as to all of the essential terms, the Court concludes that Defendant's Motion to Enforce the Settlement Agreement [Document #9 in 1:05CV63] must be denied.

I.  FACTS

In 1996, Plaintiff entered into a Broker Operating Agreement with Blue Cross/Blue Shield of North Carolina ("Blue Cross"), pursuant to which Plaintiff was entitled to commissions on Blue Cross policies that he sold to various individuals or groups. From 1997 to 1999, Plaintiff operated as an independent insurance agent in North Carolina, and sold Blue Cross products pursuant to two producer numbers. During that time, Plaintiff also acted as an independent contractor for Senn Dunn. On October 29, 1997, Plaintiff executed an "Assignment of Commissions" assigning to Senn Dunn his rights to commissions "now due or to become due [him] under the terms of the Blue Cross Broker Operating Agreement." However, it appears that the Assignment may not have been processed in 1997, and was therefore not placed into effect until December 1998. In any event, the evidence at the hearing indicated that the Assignment took effect by the beginning of 1999. As a result of the Assignment, the Blue Cross commissions were paid to Senn Dunn. Pursuant to a separate agreement between Plaintiff and Senn Dunn, the parties then, initially, divided the commissions between them. In May 1999, Plaintiff accepted employment with Senn Dunn and began operating as an employee rather than an independent contractor. No additional assignment of Plaintiff's Blue Cross policies was executed, as Senn Dunn was already entitled to receive the commissions on all of the policies on Plaintiff's producer numbers pursuant to the previous assignment of Plaintiff's rights under his

2

Broker Operating Agreement. As an employee of Senn Dunn, Plaintiff continued to sell additional Blue Cross policies, which continued to be designated by his producer numbers pursuant to the Broker Operating Agreement, but the commissions of which were paid directly to Senn Dunn pursuant to the previous Assignment. As an employee, Plaintiff was entitled to certain employee benefits from Senn Dunn, and was also paid by Senn Dunn based on a percentage of the commissions on the policies he produced.

On June 28, 2004, several years after beginning employment with Senn Dunn, Plaintiff filed an EEOC Charge against Defendant for Age Discrimination. Plaintiff filed the present lawsuit on this charge on January 4, 2005, designated in this Court as 1:05CV63. On January 6, 2005, two days after the lawsuit was filed on the first EEOC charge, Plaintiff filed his second EEOC Charge, this one alleging retaliation by Defendant.[1] An EEOC mediation was held on April 6, 2005, addressing the issues in both cases. A settlement was purportedly reached and a Settlement Agreement signed on April 6, 2005. However, when the finalized Agreement and specific schedules were sent to Plaintiff, Plaintiff refused to sign the Agreement, based on his contention that the schedules did not accurately reflect the parties' agreement. Plaintiff subsequently filed a second lawsuit, designated in this Court as 1:05CV462, seeking to recover commissions and benefits to which he believes he is entitled based on his interpretation of the Agreement. Defendant filed a Motion to Dismiss those claims [Document #4 in 1:05CV462] and

---

[1] The Court will not address further the alleged basis of those claims, as the present dispute concerns the terms of the Settlement Agreement rather than the underlying claims.

a Motion to Enforce the Settlement Agreement [Document #9 in 1:05CV63], based on its interpretation of the Agreement.

Pursuant to the terms of the Agreement, Plaintiff, who was still employed by Defendant, agreed to voluntarily resign from his position and release Defendant from any claims related to his employment, including voluntarily dismissing his EEOC charges and his age discrimination lawsuit (1:05CV63). In exchange, Defendant agreed to pay Plaintiff $25,000 by April 26, 2005, and an additional $50,000 in five annual installments beginning on April 1, 2006. These sums took into account some commissions to which Plaintiff would have been entitled had he continued as an employee of Senn Dunn.

In addition, the Settlement Agreement provided that **"Senn Dunn will use best efforts to obtain the assignment of the "Blue Advantage" accounts previously assigned by him to Senn. If Blue Cross/Blue Shield refuses to permit such assignment, Senn Dunn will pay over promptly to Martin any commissions received by Senn Dunn on such accounts."** Defendant contends that this provision refers only to those individual insurance policies that Plaintiff brought with him as an independent agent, which he assigned to Senn Dunn when he began employment with Senn Dunn. According to Defendant, these were the only "accounts previously assigned by him to Senn." Defendant thus contends that the new individual Blue Advantage "accounts" that Plaintiff produced while he was an employee of Senn Dunn were not "previously assigned" and would not be included in the settlement provision.

4

However, Plaintiff contends that the provision regarding the "Blue Advantage accounts previously assigned by him" covers all "Blue Advantage" policies for which he was the agent, including those policies that Plaintiff obtained while he was an employee of Senn Dunn. According to Plaintiff, his Broker Operating Agreement with Blue Cross created certain "accounts," designated by his producer numbers, and these "accounts" included any individual policies sold by Plaintiff, regardless of when they were sold. Plaintiff contends that this arrangement began in 1997 and continued even after he executed a single Assignment assigning the commissions on the policies in his Blue Cross "accounts" to Senn Dunn. Under Plaintiff's interpretation, the word "accounts" refers to his two Blue Cross/Blue Shield producer accounts. Plaintiff further contends that canceling the prior Assignment and reassigning those accounts back to Plaintiff would result in a reassignment of all policies issued on those accounts, regardless of when the policies were issued. The difference in the calculation of the amounts due to Plaintiff between these interpretations is $200.00 per month under Defendant's interpretation versus $6,000.00 per month under Plaintiff's interpretation.

Both parties initially contend that the Agreement is not ambiguous and should be enforced based on their respective interpretations. However, Plaintiff further contends that to the extent the Agreement may be ambiguous, there was no meeting of the minds or agreement

as to each of the essential terms. Plaintiff also contends that there was a "mutual mistake" justifying recission of the Agreement. The Court will consider these contentions below.[2]

## II. ANALYSIS

District courts have inherent power to supervise and aid implementation of settlement agreements in pending litigation. See Wood v. Virginia Hauling Co., 528 F.2d 423, 425 (4th Cir. 1975); Young v. FDIC, 103 F.3d 1180 (4th Cir. 1997). However, "[i]f there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily" and must instead "conduct a plenary evidentiary hearing in order to resolve that dispute." Hensley v. Alcon Labs., 277 F.3d 535, 541 (4th Cir. 2002) (internal quotation omitted). The hearing will involve two inquiries: (1) Have the parties in fact agreed to settle the case? and (2) What are the terms of the settlement? See Moore v. Beaufort County, 936 F.2d 159 (4th Cir. 1991); Hensley, 277 F.3d at 541.

With respect to the first inquiry as to whether a settlement agreement was reached, the Court looks to the objectively manifested intentions of the parties. See Moore, 936 F.2d 159. The Court must determine whether the parties reached a complete agreement on all material terms. If there was no complete agreement as to terms or no "meeting of the minds sufficient

---

[2] Plaintiff also contended initially that he was not given sufficient time to review the Agreement and consult with his attorney. However, on October 13, 2005, Plaintiff filed a Memorandum withdrawing that argument. Therefore, the Court need not address this issue further.

to form a complete settlement agreement," the agreement must be vacated. Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983). If the agreement is vacated, the case is restored to its place on the Court calendar as if there had been no agreement. See Ozyagcilar, 701 F.2d at 308; Wood, 528 F.2d 425. "Whether there had been a meeting of the parties' minds is clearly a question of fact" to be resolved by the Court with findings of fact after a plenary hearing. Ozyagcilar, 701 F.2d at 308. "If a district court concludes that no settlement agreement was reached or that agreement was not reached on all the material terms, then it must deny enforcement." Hensley, 277 F.3d at 541.

In this case, the parties purportedly agreed to settlement at mediation, and the parties signed the Settlement Agreement manifesting their intent to settle the case. However, the Agreement is interpreted according to principles of contract law, and the Court must consider those contract law principles to determine whether a binding agreement was in fact reached in this case. Under North Carolina law, in interpreting the contract, the Court should give effect to the intention of the parties. If the plain language of the contract is clear and unambiguous, the intention of the parties is inferred from the words of the contract, and no extrinsic evidence is required. Southern Furniture Co. of Conover, Inc. v. Dep't of Transp., 133 N.C. App. 400, 403, 516 S.E.2d 383, 386 (1999); First-Citizens Bank & Trust Co. v. 4325 Park Rd. Assocs., 133 N.C. App. 153, 156, 515 S.E.2d 51, 54 (1999). However, if the language is ambiguous, extrinsic evidence may be considered to attempt to determine the intent of the parties. See Holshouser

7

v. Shaner Hotel Group Props., One Ltd. Pshp., 134 N.C. App. 391, 397, 518 S.E.2d 17, 23 (1999), aff'd, 351 N.C. 330, 524 S.E.2d 568 (2000).

A contract provision is considered ambiguous if the language of the contract is "fairly and reasonably susceptible to either of the constructions asserted by the parties." Carolina Place Joint Venture v. Flamers Charburgers, Inc., 145 N.C. App. 696, 699, 551 S.E.2d 569, 571 (2001) (internal quotation omitted). That is, an agreement is ambiguous if the writing "leaves it uncertain as to what the agreement was." See Holshouser, 134 N.C. App. at 397, 518 S.E.2d at 23 (quotation omitted). "Whether the language of a contract is ambiguous or unambiguous is a question for the Court to determine. In making this determination, words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible." Anderson v. Anderson, 145 N.C. App. 453, 458, 550 S.E.2d 266, 269-70 (2001) (internal citation and quotations omitted).

In the present case, the Court concludes that the Agreement language is ambiguous, particularly with respect to whether the "Blue Advantage accounts" as used in the Agreement meant only those policies that existed in May 1999 at the time of Plaintiff's employment with Senn Dunn, or instead meant all of the policies that were issued on Plaintiff's Blue Advantage producer numbers, regardless of when they were issued. Thus, as used in the Agreement, the word "accounts" could refer to individual policies, or could refer to all of the policies included as part of Plaintiff's Blue Advantage accounts. Based on this unclear language, the Court cannot determine with certainty what the parties' agreement was. Therefore, the Court must consider

8

additional evidence to determine whether the parties shared the same intent with respect to this ambiguous provision.

During this hearing in this matter, the Court considered evidence by the parties as to their intent. Based on this evidence, the Court concludes that the parties did not share the same intent at the time the Agreement was signed, and there was no "meeting of the minds" as to the meaning of the term "accounts," which in this instance was a material term. Therefore, because there was no complete agreement as to terms or no "meeting of the minds sufficient to form a complete settlement agreement," the Agreement must be vacated, and the case restored to its place on the Court's calendar as if there had been no agreement. See Ozyagcilar, 701 F.2d at 308.[3] For these reasons, Defendant's Motion to Enforce Settlement Agreement [Document #9 in 1:05CV63] will be denied, the Agreement is vacated, and this case, designated as 1:05CV63, is returned to the Court's calendar.

The Court further concludes that the subsequent case filed by Plaintiff against Defendant, designated as 1:05CV462, involves similar factual issues, and should be consolidated with

---

[3] Having so concluded, the Court need not address Plaintiff's additional argument that the Agreement should be voided based on a "mutual mistake." However, the Court notes that, as Defendant asserted, under North Carolina law a "mutual mistake of fact" is a mistake of existing or past fact that is common to both parties (that is, both parties believed the same incorrect information), and by reason of it each has done what neither intended. See Lancaster v. Lancaster, 138 N.C. App. 459, 465-66, 530 S.E.2d 82, 86 (2000); see also Smith v. First Choice Servs., 158 N.C. App. 244, 249, 580 S.E.2d 743, 748 (2003) (noting that "[a] mutual mistake exists when both parties to a contract proceed under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." (emphasis added) (internal quotations omitted)).

1:05CV63 for the Court's convenience. Finally, the Court notes that Defendant previously filed Motions to Dismiss in both cases, which may be affected by this Court's determination as to the Settlement Agreement. Therefore, the pending Motions to Dismiss [Document #5 in 1:05 CV63 and Document #4 in 1:05CV462] will be denied without prejudice to Defendant filing a renewed Motion to Dismiss on any basis (other than the question of whether a settlement exists) as to any of the claims raised by Plaintiff in either of the consolidated cases. If Defendant chooses to file such a Motion to Dismiss, it should be filed within 30 days.

III. CONCLUSION

For the reasons discussed above, the Court finds that the terms of the parties' Settlement Agreement are ambiguous. The Court further finds that there was no "meeting of the minds" with respect to the meaning of the term "accounts" to be reassigned to Plaintiff, which was a material term of the Agreement. The Agreement must therefore be vacated. Defendant's Motion to Enforce Settlement Agreement [Document #9 in 1:05CV63] will be DENIED, and this case, designated as 1:05CV63, is returned to the Court's calendar. In addition, the subsequent case filed by Plaintiff against Defendant, designated as 1:05CV462, is hereby consolidated with 1:05CV63 for the Court's convenience. Finally, the pending Motions to Dismiss [Document #5 in 1:05CV63 and Document #4 in 1:05CV462] will be DENIED WITHOUT PREJUDICE to Defendant filing a renewed Motion to Dismiss within 30 days on any basis (other than the question of whether a settlement exists) as to any of the claims raised by Plaintiff in either of the consolidated cases.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 7th day of November, 2005.

_____
United States District Judge